## Bosch Petition

HENNINGER, P. J., November 14, 1956.—This petitioner, a citizen of the United States by naturalization in the United States District Court at Philadelphia, on December 11, 1951, on October 7, 1955, filed the petition for the naturalization mentioned above on behalf of her son, Gerard Candon, age 13, a native of North Ireland and a national of Great Britain, under the provisions of section 322 of the Immigration and Nationality Act of June 27, 1952, C. 477, 66 Stat. at L. 246, 8 U. S. C. §1433.

The question presented is whether the illegitimate alien child of an American citizen may be naturalized upon the basis of a petition filed by the parent under section 322 of the Immigration and Nationality Act.

The beneficiary of this petition was born out of wedlock to the petitioner at Belfast, North Ireland, on March 30, 1943, and lawfully entered the United States for permanent residence on May 10, 1946. The beneficiary has never been legitimated by any law or legal proceedings. The petitioner became a citizen of the United States by virtue of naturalization.

The facts are not in dispute. What is involved is purely a question of law.

The pertinent part of section 322 of the act provides:

"A child born outside of the United States, one or both of whose parents is at the time of petitioning for the naturalization of the child, a citizen of the United States, either by birth or naturalization, may be naturalized if under the age of eighteen years . . . if residing permanently in the United States, with the citizen parent, pursuant to a lawful admission for permanent residence, on the petition of such citizen parent."

The pertinent part of section 101 of the act provides:

"(c) As used in Subchapter III of this chapter—

"(1) The term 'child' means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere . . . if such legitimation . . . takes place before the child reaches the age of sixteen years, and the child is in the legal custody of the legitimating . . . parent or parents at the time of such legitimation. . . ."

The designated naturalization examiner has moved for denial of the petition on the grounds that where the word "child" is used in an Act of Congress it must be understood to mean a legitimate child, that this is borne out by the provision for legitimated children in section 101 of the Act of Congress of June 27, 1952, C. 477, 8 U. S. C. §1101, that whereas the former Nationality Act of 1940 made no provision for derivative citizenship of an illegitimate child through naturalization of its mother, the Act of 1952 in section 321, 8 U. S. C. §1432, provided for such derivative citizenship, but made no change in section 322, 8 U. S. C. §1433, which provides for the naturalization of minor children.

We cannot accept this line of reasoning. As pointed out in Petition of Sadin, 100 F. Supp. 14, the right

to naturalization under the section of the 1940 Act corresponding to section 322 of the 1952 Act depends upon the qualification of *one or both* of his parents and, therefore, if he bears the proper relation to one of his parents, his relation to the other is irrevelant. Consequently, the District Court of New York held that if an illegitimate child applied for naturalization through a qualifying mother, it was immaterial that it had not been legitimated by its natural father.

Under Pennsylvania law, which governs the relationship between this boy and his mother, we can point to no continuing disqualification of an illegitimate child so far as its relationship as the child of its mother is concerned. Whatever may have been the stigmata and disabilities of a bastard at common law, no such distinction between a *mother's* legitimate and illegitimate children remains today.

The illegitimate child today is filius nullius only as relates to its father. Under the Act of June 24, 1937, P. L. 2017, sec. 501, 62 PS §2331(*b*) and (*i*), the settlement of an illegitimate child is and continues to be that of the mother during minority and, since the child in question is only 13 years old, we need not complicate our discussion by referring to the exception of emancipation. For over 100 years, since the Act of April 27, 1855, P. L. 368 (since repealed) an illegitimate child was recognized as the heir of its mother and since the passage of the Act of July 10, 1901, P. L. 639 (also since repealed) and under the present Inheritance Law of April 24, 1947, P. L. 80, sec. 7, 20 PS §1.7, it is provided, "For purposes of descent by, from and through an illegitimate, he shall be considered the child of his mother but not of his father." This language is repeated in the Wills Act of April 24, 1947, P. L. 89, sec. 14(7) and sec. 14(11), 20 PS §180.14(7) and (11), and in the Estates Act of April 24, 1947, P. L. 100, sec. 14(4), 20 PS §301.14(4).

Our attention has not been called to any Federal ruling which holds that the word "child" as used in Acts of Congress must apply solely to legitimate children, so far as the child's relation to its natural mother is concerned.

In the absence of such a ruling, we look to the general use of the term and while there is the nasty word "bastard" for an illegitimate child, the very term "illegitimate child" indicates that the word "child" can include both legitimate and illegitimate children. There is no doubt in this case that Gerard Candon is a child, that he is not a monster, and that he is the *child* of Mrs. Bosch.

We look then to the legislative definition of the word "child," by which we are bound in interpreting the Nationality Act of 1952. The general terms of the definition clearly include Gerard Candon for he is an unmarried person under 21 years of age. When we turn to section 322, we find he was born outside of the United States, that one of his parents was a citizen by naturalization, that he is under 18 years of age, that he is residing permanently in the United States, with the citizen parent and, so far as has been shown, that he possesses no disqualification from becoming a citizen under the cited sections.

We return, therefore, to the definition of a child. In our opinion, the distinction between the definition of a "child" as used in titles I and II and that in title III of the 1952 Act indicates that the definition was intended to be more liberal in title III than in titles I and II. Clearly a distinction was intended or the provisions would have been repeated or one definition would have been used for titles I, II and III.

Since the use of the word "child" in titles I and II is limited to a legitimate child, a stepchild and a legitimated child, the absence of such restrictions in the definition of the word for title III clearly shows that

a child need not be either legitimate or legitimated (we are not here concerned with stepchildren) to come under section 322 of the act.

Furthermore, since we are bound by the legislative definition, we cannot introduce any terms of the definition as used in titles I and II by inference or implication into the definition of the same term in section 322. By analogy, see Adamowski v. Bard, 193 F. 2d 578, 581.

The examiner next calls our attention to distinctions between section 321 applying to derivative citizenship and section 322 applying to naturalization of minors and to the fact that Congress in 1952 amended section 321 by according derivative citizenship to children born out of wedlock upon naturalization of the custodian mother without making any changes to section 322.

The case of In re Sadin, supra, would seem to be the answer to the question of comparison of sections 321 and 322. There is nothing in the language of section 322 or in the definition of "child" applicable thereto which required any change in section 322 in order to make an illegitimate child eligible to naturalization and therefore Congress had no need to amend section 322. As section 321 read before amendment, derivative citizenship could be achieved upon the naturalization of but one parent, only if the other parent were dead or if there were a legal separation. Clearly neither described the situation of a child born out of wedlock. In section 322, on the other hand, the only requirement was that the child must be under 18 years of age and must reside permanently in the United States with the citizen parent.

If, as the examiner contends, our interpretation would make section 322 more liberal than section 321 in favor of illegitimate children, we can understand why this should be so. Under section 321, citizenship

follows as a matter of law, whereas under section 322 it is subject to scrutiny and, therefore, there is no harm in its being open to a larger group of individuals.

The examiner's final contention is that the definition of "child" in section 101 must limit the definition to a legitimate or legitimated child because of the added words, ". . . and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere . . . if such legitimation . . . takes place before the child reaches the age of sixteen years, and the child is in the legal custody of the legitimating . . . parent or parents at the time of such legitimation. . . ."

There are two answers to this contention. First, our Federal Courts have held that a clause of inclusion is not introduced "to shrivel a versatile principle to an illustrative application. . . . The word 'including' does not lend itself to such destructive significance" : Phelps Dodge Corp. v. National Labor Rel. Bd., 313 U. S. 177, 189; Federal Land Bank v. Bismarck Lumber Co., 314 U. S. 94, 100.

Second, the inclusion clause would indicate that the preceding language includes illegitimate as well as legitimate children, for otherwise a legitimation clause would be unnecessary. The inclusion clause is necessary not to bar an illegitimate from applying through its mother but to enable a formerly illegitimate child to use its father's citizenship as a basis for naturalization. It has no bearing whatsoever upon the relation between an illegitimate child and its natural mother.

Finally, adoption of the examiner's position would debar every illegitimate child from citizenship by naturalization. That this is not the present policy of our Government is apparent because it is now permissible derivatively. Clearly there are many cases where legitimation is impossible, because the natural

father may be a married man or may have absconded.

The day when a child born out of wedlock was branded with the title of bastard and deemed an outcast has passed. We now recognize that the knowledge of the bar sinister is a sufficient burden to bear for a sin the child has not committed. He should not be barred from citizenship because of his illegitimacy, which would be the effect if he were forbidden to apply for citizenship through a qualfiying mother.

In considering this case, we have disregarded the information that has come to us that a few weeks ago Gerard was legally adopted by his mother and her present citizen husband, because that fact cannot affect the present application.

Now, as of November 14, 1956, the motion of the examiner to deny the petition for naturalization is denied and the petition of Emily Christina Bosch for the naturalization of her minor son, Gerard Candon, is granted and upon administration of the oath of allegiance he may be admitted to United States citizenship, and an exception to this order is noted.